**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×
TIFFANY LENTZ,

                *Plaintiff,*

     *v.*

THOUGHTWORKS, INC. and KISHORE RACHAPUDI,

            *Defendants.*
------------------------------------------------------------------------×

**20-CV-7043**

**COMPLAINT**

     Plaintiff Tiffany Lentz, by her counsel, Young & Ma LLP and McLaughlin & Stern, LLP, alleges for her Complaint against Defendants ThoughtWorks, Inc. and Kishore Rachapudi, as follows:

## PRELIMINARY STATEMENT

     1.    Plaintiff Tiffany Lentz ("Plaintiff" or "Ms. Lentz") seeks damages and costs against Defendants ThoughtWorks, Inc. ("ThoughtWorks") and Kishore Rachapudi ("Rachapudi") (collectively, "Defendants") for discriminating against her based on her national origin/race and gender, and among other things, subjecting her to a hostile work environment and ultimately constructively discharging her from her employment after she reported discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

     2.    Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male colleagues who provide similar or the same work and have similar or the same credentials and experience as Plaintiff in violation of N.Y. Labor Law § 194.

3.      Plaintiff also seeks damages and costs against Defendant Rachapudi for tortious interference with an advantageous employment relationship.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants violated Plaintiff's rights under Title VII.

5.      Plaintiff filed a Complaint with the New York City Commission on Human Rights ("NYCCHR") on or about March 11, 2020.

6.      The NYCCHR issued a Notice of Administrative Closure on March 30, 2020, and the EEOC issued a Right to Sue Letter on June 2, 2020.

7.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, N.Y. Lab. Law § 194 and tortious interference claims as they are so related to the Title VII claim that they form part of the same case or controversy.

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

9.      Ms. Lentz, at all times relevant hereto, was and is a resident of New York County in the State of New York.

10.     Upon information and belief, at all times relevant hereto, Defendant ThoughtWorks, Inc. was and is a U.S. corporation headquartered in Chicago, IL, doing business in New York City with offices located at 99 Madison Ave, 15th Floor, New York, NY 10016.  At all relevant times to this action, Plaintiff reported to this address for work.

11.     Upon information and belief, Defendant Rachapudi is an individual residing in New York and works as the Head of Demand of ThoughtWorks, Inc.

## STATEMENT OF FACTS

12.     Ms. Lentz, a 43 year old White woman, originally started as a program manager with Defendant ThoughtWorks in 2004 when she was in her late 20s.  She was since then promoted successively to Agile consultant, then Director, then VP/General Manager, then Managing Director, and then to VP Head of Delivery and Client Experience and Global Managing Director of the Office of Social Change.  Every year of her employment, Ms. Lentz's objectively excellent performance was acknowledged with above average salary increases.  Even when ThoughtWorks did not reach variable compensation targets based on global and local revenue and NOI, Ms. Lentz was given a discretionary raise for high performance.

13.     Ms. Lentz was published by ThoughtWorks in its first Anthology, and was invited to speak at countless ThoughtWorks events, leadership events and office events in ThoughtWorks offices all over the globe.  She was a Women in Leadership Development sponsor in 2014 and Global LD sponsor.  In 2016, Ms. Lentz was a keynote speaker for EU Away Day to present OSCI work – presenting to 1000 ThoughtWorkers in India on OSCI work.  In 2017, she was nominated best technology manager in Chicago.  In 2018, Lentz represented ThoughtWorks at YearoftheX, a 1000-person innovators conference.

14.     Ms. Lentz was responsible for all ThoughtWorks videos from 2014-2017, including responsibility for producing global videos about her and her team's work in OSCI as the face of the Founder's P3 vision and mission.  In 2014-2018, she was acknowledged for the Master for Ceremonies for ParadigmShift.  Ms. Lentz was also responsible for the Iteration Management Chapter at the Company, mentoring women, and served as a board member at her local church.

15.     When Defendant Rachapudi, an Indian man, joined the Company in 2015 as Head of Demand, he started to increase the power of Indian male employees and Indian male personal allies (sometimes regardless of capability) to increase loyalty to himself.  He empowered and communicated in silo with Sai Mandapaty ("Mandapaty "), the Indian Chief Commercial Officer. In a meeting that year, Mandapaty said about an employee, "I can promote him or I could fire him – it doesn't make a difference to me."  Rachapudi and Mandapaty both did not respect people at the Company, with such disrespect elevated towards female employees and non-Indian employees.

16.     In late 2017, Lauren David ("David"), a very experienced White female employee in her 50s, reported Defendant Rachapudi for being sexist and passing her over in the Demand team with a large account.  Rachapudi assigned this account to a younger (30s) Indian employee, Prem Vishwanathan ("Vishwanathan"), with virtually no retail experience.  Rachapudi sabotaged Ms. Lentz's relationship with Vishwanathan by continuously saying, untruthfully, that Ms. Lentz does not like Vishwanathan – Ms. Lentz simply agreed that this particular assignment was suspect from the perspective of gender discrimination.

17.     Defendants commenced a pattern of treating women who raise discrimination complaints as enemies of the Company.  Plaintiff alleges that most or all of the women who raised discrimination are no longer with the Company whether by termination or forced resignation.

18.     Following David's complaint against Defendant Rachapudi, Ms. Lentz agreed to a request from Staci Larock in HR to work with Rachapudi on the topic of gender equality and sensitivity.  Ms. Lentz approached Rachapudi in a friendly way in Chicago, affirming that she did not believe him to be sexist (which was true at the time because she did not know him well), and offered to utilize her personal network to address the complaint, as she has a strong profile and credibility among Women in IT.  Ms. Lentz offered to pair with Rachapudi on various projects so

that he would have a strong female image aligned with his work.  Rachapudi simply said, "I don't need help," and walked away.  This was Ms. Lentz's first memorable experience of Rachapudi's dismissiveness towards her, with no possible explanation other than that as a White woman, she was in no position to coach him on workplace relationships and gender issues (as she definitely had the substantive experience and seniority to do so).  Ms. Lentz was very surprised at Rachapudi's reaction, as she had so many respectful, strong, and healthy relationships with male Indian MDs (and other Indian executives of both genders), both in India and the U.S. prior to working with Rachapudi.  Thereafter, Ms. Lentz was excluded from account meetings, such as Kroger.  When Ms. Lentz gently asked to shadow Rachapudi, he would respond, "sure sure," then never follow up.

19.     Consistent with Ms. Lentz's prior initiatives for the Company, she came up with a great Opex spend concept supported by Amy Lindenmeyer ("Lindenmeyer")(Head of Finance), involving the elimination of consultants traveling to client sites at the client's expense, which would save clients unrecoupable Opex spend.  The savings would be 25% on $40 million worth of contracts.  Defendant Rachapudi was dismissive once again without explanation, saying, "No, now is not the time for that".  The client agreed with Ms. Lentz a year later and much resources and time were wasted, as well as increasing the hostile work environment for Ms. Lentz and reducing her confidence.

20.     Defendant Rachapudi consistently referred to his "25 years of experience in delivery" while discounting Ms. Lentz's 16-year success, specifically as a woman, at ThoughtWorks.  The Kroger account earned the title "Indian mafia" because of how Rachapudi did business.  When Ms. Lentz brought this to Rachapudi's attention (instead of speaking about

him behind his back, something Rachapudi did often about Ms. Lentz to Indian colleagues), Rachapudi blamed the younger male client principal instead of taking responsibility.

21.    Ms. Lentz, having lived in India, had more than sufficient substantive and cultural experience to work with many Indian people.  But Defendant Rachapudi, when frequently bringing Indian male employees on his team to whiskey bars to discuss business, discriminated against and never included or invited Ms. Lentz because of her race (White/non-Indian) and gender (female).

22.    When Sunshine Burkett ("Burkett") and Neha Kalantri ("Kalantri") joined the Company, they were shadowing the Kroger account for onboarding purposes.  Both female employees complained to Ms. Lentz that they were shot down for being "opinionated" if they asked questions on the team.  Kalantri said specifically that she was very disappointed to be in this situation as an Indian woman, as she had just left another hostile work environment where Indian men treated Indian women exactly like this.  Defendant Rachapudi's toxic behavior was creating irreversible market damage in how employees compared the work environment to other racist/sexist work environments, especially since ThoughtWorks projects itself as a progressive Company.

23.    In the summer of 2018, Ms. Lentz was launching the Client Services initiative to grow the CST team. Her supervisor, Chris Murphy ("Murphy"), agreed that she would have the final decision-making authority.  However, Defendant Rachapudi interjected that Ms. Lentz should not bother interviewing candidates because he had the best of delivery leaders he worked with on another account.  Rachapudi was referring to an older Indian man, Shyam Kuran, even though Nancy Kistler (a White woman that Rachapudi was incapable of respecting because of her race), who has many years of experience at the Company, was also capable of handling.

24.     Ron Hackmann (White male) asked to be rolled off the Kroger account due to stress.  He was known to have a great personality, was well-respected and easy going, and had never asked to be removed from projects before.  Defendant Rachapudi did not see this as his own failure but instead made threats like, "that man is dead to me."

25.     ThoughtWorks put Ms. Lentz in a position to experience retaliation by conveniently utilizing her, a senior White woman in IT with good knowledge of gender initiatives, as the political "face" to bridge the Company's gap with Defendant Rachapudi.  On November 21, 2018, Ms. Lentz wrote Rachapudi a balanced email to advance the conversation, to which Rachapudi had a very defensive response.  Around this time, Rachapudi was also sabotaging Ms. Lentz on the Citi account by turning Indian leaders against her before she had a chance to work with them, using the tactic he had used with Vishwanathan, indicating, "Tiffany doesn't like you."  In the winter Cincinnati meeting, Ms. Lentz spent two hours meeting with Rachapudi (despite how difficult it was for her emotionally), during which Rachapudi only talked about himself and how he's done "bigger" things and for Ms. Lentz to stay in her lane.  He specifically indicated that unless Murphy directly asked them to collaborate, Ms. Lentz could expect that Rachapudi would not collaborate with her.

26.     In January 2019, Defendant Rachapudi was screaming "fuck" at a bar full of ThoughtWorks employees because at there had been a conflict of moving a senior delivery leader to California.  He blamed Ms. Lentz for this because she was looking at the big picture rather than satisfying Rachapudi's political goals.   Meanwhile, Murphy acknowledged Ms. Lentz's contribution to the Company, introducing Ms. Lentz at the Demand conference as someone who "built something from nothing" and thanked her for her contributions to the Company.

27.     At a February dinner, while asking Ms. Lentz to help with Defendant Rachapudi's issues with women, Murphy admitted that Rachapudi does not respect even him and does not feel like he reports to Murphy (only to Mandapaty, the Indian manager), even though Murphy was Group Managing Director of the Company in North America.

28.     In spring 2019, Defendant Rachapudi misrepresented to Kroger (his most valued account) that he was going to give money back to them, but his financial forecast internally indicated that he was going to spend all the money.   When Ms. Lentz asked him about this inconsistency, he was irate.   However, the Head of Strategy Joe Murray agreed with Ms. Lentz that if he were not going to spend all the money in the contract, he needed to better update the forecast for honesty and transparency to his colleagues and client.

29.     As further investigations continued concerning Defendant Rachapudi in 2019, Ms. Lentz increasingly suffered retaliation and hostility.   Even though Rachapudi often used the phrase, "all I care about is the business,"  the Company should have upheld federal, state and city laws recognizing that people are just as important, that there is no room in executive positions today to focus on only one aspect of leadership at the exclusion of others.   Due to HR and the Company's unwillingness to take a strong legal position on anti-discrimination, anti-sexism and anti-racism at the Company, the investigation seemed to be led by Ms. Lentz due to her profile as the White female executive that could not get along with Rachapudi, even though she did not launch the original complaints against Rachapudi.   In the course of the investigation, Ms. Lentz reported that the following women had difficulties with Rachapudi: Head of NA marketing, Lauren David, Miranda Hill, Head of Recruiting, Head of Finance, two senior delivery leaders, and the head of NA Technology.

30.     The Company avoided addressing discrimination on the basis of race and gender, admitting only the leadership issues (including subconscious bias) on which Defendant Rachapudi needed to work.  He was recommended for "leadership" coaching, even though Ms. Lentz gave specific examples of how the informal coaching method was insufficient to stop the hostile culture of discrimination Rachapudi had instilled in the team and in the entire Company.  For instance, Ms. Lentz said kindly, and futilely, to Rachapudi, "Have you noticed that Amy (Head of Finance) has expressed the same concern a few times now?"

31.     Instead of strict anti-retaliation instructions to Defendant Rachapudi, Murphy decided it was best he "mediate" Rachapudi's feelings that Ms. Lentz was responsible for the investigation.  Even if Ms. Lentz were the person who initiated the investigation (which she was not), or if she were the only woman who complained about Rachapudi (which she was not), it was unlawful for Rachapudi to retaliate in any way against Ms. Lentz's engaging in protected activity.  In a textbook example of blaming the female victim at work, Rachapudi and the Company attacked Ms. Lentz's teamwork capacities rather than focusing on Rachapudi's own need to change.  Unsurprisingly, Carl Dill, Rachapudi's leadership coach and a former Board Member, said Rachapudi was hard to work with.

32.     Most insultingly, Ms. Lentz was asked to placate the other female victims and indicate that she was willing to work with Defendant Rachapudi.  This expectation that a senior woman in IT was responsible for the "emotional labor" and business of people management is discriminatory on its face.  Ms. Lentz clearly had strong business skills as all her work had been related to long-term growth and she had proven success.

33.     Ryan Hanisco ("Hanisco")(non-Indian) resigned due to Defendant Rachapudi's racist tendencies in placing lesser-experienced Indian men on projects over him.  Marcelo De

Santis (non-Indian) also wanted to resign due to the hostile and discriminatory environment set up by Rachapudi.  Ms. Lentz spent a lot of hours salvaging this but received no appreciation from Rachapudi.

34.     In an April 24, 2019 email to HR, Ms. Lentz reported Defendant Rachapudi's aforementioned treatment of Burkett and Kalantri.

35.     In May 2019, Murphy, likely understanding the magnitude of the problem, said there would be an extra layer in operations for a NA-COO role.  He was building out a strategy and operations committee and offered for Ms. Lentz to head operations, which would have brought her up to par for her tenure and expertise.  Murphy assured that Defendant Rachapudi would not be in strategy and confirmed Rachel Laycock ("Laycock") as the Head of Technology.  Just as Ms. Lentz finally felt women in IT were going to be recognized at the Company in executive, client-facing roles, Rachapudi continued to undermine Ms. Lentz, because the Company did not require him to comply with federal, state and city anti-discrimination laws and because he was not prevented from retaliation.

36.     In a June 13, 2019 email chain, Defendant Rachapudi continued to spin the facts when Laycock and Ms. Lentz both asked for retrospectives.  He again took no responsibility for Hanisco's resignation and for his own toxic and illegal conduct in the workplace.

37.     In August 2019, because matters were not dealt with properly with Defendant Rachapudi, Murphy was forced to change his tune as to Ms. Lentz's promotion (or rather being brought up to par for her tenure and expertise).  Rachapudi was eventually allowed to head operations, as Murphy had to "be seen" as the person dealing with the issues on the NALT. Murphy started to attack Ms. Lentz on her ability to be a teammate where the only possible "evidence" for that allegation was her participation in the investigation against Rachapudi. With

Rachapudi promoted over Ms. Lentz, the withdrawal of her opportunity to be on par with her male comparative in the wake of Governor Cuomo expanding equal pay laws in New York is shocking. Ms. Lentz believes Rachapudi was always paid higher than her, and this was further enhanced by his promotion supported by Defendants' initiatives to punish women who speak up and reward the male perpetrator of gender and race discrimination.

38.     Since then, multiple colleagues witnessed Ms. Lentz having involuntary emotional breakdowns at work.  Suffering extremely severe emotional distress and damage, she constantly feared further retaliation and feared even speaking to her teammates as she had been told multiple times to stay in her lane.  This experience was very isolating and crushing to Ms. Lentz.

39.     Adding insult to injury, Ms. Lentz was excluded from many major business meetings internally and externally, and was not provided the opportunities for business advancement such as through expensive courses at Columbia University, which were provided to Defendant Rachapudi and other male employees.  Ms. Lentz was now also being questioned as to her times in the office (which was historically never how she was evaluated).  Rachapudi and Mandapaty continued to disparage Ms. Lentz behind her back.

40.     Despite this mistreatment and retaliation, Defendants refused to acknowledge discrimination and retaliation.  Defendants suggested for a 16-year tenure, Ms. Lentz would only receive 1 year severance (which was inclusive of a 4 month sabbatical) and indicated she would be subject to an onerous non-compete, even though the Company refused to acknowledge her as a senior executive and Ms. Lentz had no such restrictions in her employment agreements with the Company.  The Company was suggesting she leave with nothing except generic severance given to all similarly titled and much less tenured employees without any gross up for earned sabbatical and which would subject her to a new onerous non-compete.  Nothing was offered for Ms. Lentz's

discrimination experience or the fact that her continuing career at ThoughtWorks was ending after 16 years, exclusively because of discrimination and retaliation.

41.     Another female colleague at ThoughtWorks, Amy Lindenmeyer, who is referenced in this Complaint and who was vocal about discrimination, left the company and Ms. Lentz believes this happened involuntarily.

42.     Due to the emotional distress, Ms. Lentz sought medical help. In September 2019, based on her symptoms (including difficulty sleeping, fatigue, being continually preoccupied with the events that have transpired at her job, difficulty focusing, fears that others at ThoughtWorks are colluding to hamper her growth at the company and to fire her, having difficulty staying engaged when interacting with others, depressive moods, feelings of helplessness, diminished self-confidence, withdrawal from others, feelings of sadness, periods of tearfulness), her psychologist confirmed Ms. Lentz's adjustment disorder with mixed anxiety and depressed mood, precipitated by stressors she experienced at ThoughtWorks.  In addition to this, Ms. Lentz was evaluated by her physician to determine if work-related stress played a part in intensifying symptoms of an auto-immune disease from which she suffers.

43.     On November 4, 2019, Ms. Lentz reported the information in this Complaint again to Defendants through counsel.  Nothing was done, and no changes were made.  Ms. Lentz also developed hypertension, which she had no prior history of and which her physician considered to be stress related, and was treated with anti-hypertensive medication.

44.     Since reporting the discrimination to ThoughtWorks on her own and again through counsel on November 4, 2019, Ms. Lentz experienced other retaliation and mistreatment, including but not limited to in the form of constant undefined and shifting roles with no direction (taking away all opportunities for advancement), pitting women against Ms. Lentz while superficially

providing a new female manager to manage her out, misrepresenting what happened at the investigation, watching her comings and goings (time in office) differently than before and different from her peers, taking away all direct reports, and prohibiting her from participating in key education opportunities offered to the perpetrator of discrimination.

45.     In February 2020, Ms. Lentz's psychologist noted that she continued to experience the same stress-related symptoms and had developed additional stress-related symptoms, and recommended that Ms. Lentz no longer continue working at ThoughtWorks, as remaining there was proving deleterious to her mental health.

46.     Therefore, under great distress and to not further deteriorate her emotional health and under medical advice, Ms. Lentz was forced to remove herself from the hostile work environment, as the situation was not sustainable medically. Ms. Lentz provided Defendants with notice of her constructive discharge February 19, 2019, effective February 21, 2019.

47.     After constructive discharge due to the retaliation and medical conditions caused by Defendants' actions, Defendants refused to continue Ms. Lentz's salary with her earned sabbatical as they have for other departing employees who have not alleged gender discrimination, hostile work environment, and other discrimination issues raised in this Complaint and as she raised internally.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### National Origin/Race and Gender Discrimination and Hostile Work Environment
### in Violation of Title VII
### (Against Defendant ThoughtWorks, Inc.)

48.     Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

49.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., for relief based upon the unlawful employment practices of the above-named Defendant ThoughtWorks, Inc.

50.     Defendant ThoughtWorks, Inc. was and is an employer within the meaning of Title VII.

51.     At all times relevant to this case, Plaintiff was and is a White woman, and is a member of protected classes within the meaning of Title VII.

52.     At all times, Defendant ThoughtWorks, Inc. was aware of Plaintiff's national origin, race and gender.

53.     Defendant ThoughtWorks, Inc. engaged in unlawful employment practices prohibited by Title VII because of Plaintiff's national origin, race and gender in the manner described in the Statement of Facts.

54.     Plaintiff was subjected to a pervasive hostile work environment by the Defendant's conduct.

55.     Ultimately, Plaintiff was constructively discharged by Defendant due to the retaliation and medical conditions caused by Defendant's actions based on Plaintiff's national origin, race and gender.

56.     As a direct and proximate result of Defendant ThoughtWorks, Inc.'s unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income, loss of salary, and continued advancement in his career.  Plaintiff will also have suffered future pecuniary losses, attorney's fees and costs, emotional pain and suffering, inconvenience and other non-pecuniary losses.

57.     As a further direct and proximate result of Defendant's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other items, impairment and damage to Plaintiff's good name and reputation, emotional distress, mental anguish and lasting embarrassment and humiliation.

58.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Defendant under Title VII.

**SECOND CAUSE OF ACTION**
**National Origin, Race, and Gender Discrimination in Violation**
**of New York City Human Rights Law**
**(Against All Defendants)**

59.     Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

60.     This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 et seq., and reference is made to the NYCHRL in its entirety.

61.     At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

62.     At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

63.     At all times relevant to this case, Plaintiff was and is a White woman, and is a member of protected classes within the meaning of NYCHRL.

64.     At all times, Defendants were aware of Plaintiff's national origin, race, and gender.

65.     Defendants engaged in unlawful employment practices prohibited by NYCHRL because of Plaintiff's national origin, race, and gender in the manner described in the Statement of Facts.

66.    Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

67.    Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination.

68.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL. See, e.g., NYCHRL § 8-107(1) and § 8-107(6).

69.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer injury, with resulting monetary, economic and other damages, including without limitation: (i) lost wages; (ii) lost back pay; (iii) lost benefits; (iv) lost interest; (v) lost bonuses; and (vi) attorney's fees and costs.

70.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continues to suffer, among other items, impairment and damage to Plaintiffs' good name and reputation, emotional distress, mental anguish, emotional pain and suffering, and lasting embarrassment and humiliation.

71.    Plaintiff is entitled to recover monetary damages and other damages and relief, including punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**THIRD CAUSE OF ACTION**
**National Origin, Race, and Gender Discrimination in Violation**
**of New York State Human Rights Law**
**(Against All Defendants)**

72.    Plaintiff hereby realleges and incorporates each and every allegation contained in the above paragraphs with the same force as though separately alleged herein.

73.     This claim is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 et seq., and reference is made to the NYSHRL in its entirety.

74.     At all relevant times, Defendants were and are employers within the meaning of the NYSHRL.

75.     At all relevant times, Plaintiff was and is an employee within the meaning of the NYSHRL.

76.     At all times relevant to this case, Plaintiff was and is a White woman, and is a member of protected classes within the meaning of NYSHRL.

77.     At all times, Defendants were aware of Plaintiff's national origin, race, and gender.

78.     Defendants engaged in unlawful employment practices prohibited by NYSHRL because of Plaintiff's national origin, race, and gender in the manner described in the Statement of Facts.

79.     Ultimately, Plaintiff was constructively discharged by Defendant due to the retaliation and medical conditions caused by Defendants' actions based on Plaintiff's national origin, race and gender.

80.     Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of national origin, race, and gender as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

81.     Defendants are also individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL. See, e.g., NYSHRL § 296(1) and § 296(6).

82.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

83.     Plaintiff's damages include financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

84.     Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to back pay, front pay, and compensatory damages from Defendants under the NYSHRL.

**FOURTH CAUSE OF ACTION**
**Violation of New York State Labor Law § 194**
**(Against All Defendants)**

85.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

86.     Plaintiff was an "employee" of ThoughtWorks, Inc. as defined under N.Y. Lab. Law § 190(2).

87.     Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

88.     Defendants knowingly, willfully and intentionally paid Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's gender.

89.     Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bond fide factor, but rather is based on Plaintiff's status in protected classes.

90.     The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Facts.

91.     As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three hundred percent of the total amount of the wages due for Defendants' willful violation.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of Title VII**
**(Against Defendant ThoughtWorks, Inc.) and**
**the NYSHRL and NYCHRL**
**(Against All Defendants)**

92.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

93.     Defendant ThoughtWorks violated Title VII, and all Defendants violated the NYSHRL and NYCHRL, because they knowingly retaliated against Plaintiff for reporting discrimination as alleged in the Statement of Facts above.

94.     Defendants were aware that Plaintiff engaged in the protected activities alleged above.

95.     Because of her protected activities, Defendants took retaliatory adverse employment actions against Plaintiff as alleged in the Statement of Facts above, including, but not limited to, in the form of constant undefined and shifting roles with no direction (taking away all opportunities for advancement), pitting women against Ms. Lentz while superficially providing a new female manager to manage her out, misrepresenting what happened at the investigation, watching her comings and goings (time in office) differently than before and different from her peers, taking away all direct reports, and prohibiting her from participating in key education opportunities offered to the perpetrator of discrimination.

96.     The unlawful retaliation against Plaintiff by Defendants was done with malice and reckless indifference to Plaintiff's protected rights.

97.     As a direct and proximate result of the unlawful retaliation by Defendants, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

**SIXTH CAUSE OF ACTION**
**Tortious Interference with an Advantageous Employment Relationship**
**(Against Defendant Rachapudi)**

98.     Plaintiff repeats and realleges the allegations in the Complaint as if fully set forth herein.

99.     Plaintiff had a contract and an advantageous employment relationship with Defendant ThoughtWorks before Defendant Rachapudi joined the Company.

100.    Defendant Rachapudi knew of Plaintiff's contract and advantageous employment relationship with Defendant ThoughtWorks when he started a campaign of undermining, excluding, sabotaging, and retaliating against Plaintiff as more fully outlined in the Statement of Facts.

101.     Defendant Rachapudi, for the sole purpose of harming Plaintiff and satisfying his own ego based on unwarranted racism and sexism, interfered with Plaintiff's advantageous employment status with ThoughtWorks.

102.     Defendant Rachapudi willfully, wrongfully, and in bad faith and without justification interfered with Plaintiff's contract and advantageous employment relationship with ThoughtWorks in the ways detailed in the Statement of Facts.

103.    Due to Defendant Rachapudi's conduct and campaign for Plaintiff's demise, Plaintiff has suffered discrimination and a hostile work environment, completely lost all positive arrangements and goodwill she had with ThoughtWorks, and was ultimately relegated to a position where she was constructively discharged.

104.    As a direct and proximate result of Defendant Rachapudi's wrongful conduct, Plaintiff has suffered serious damage in an amount to be determined at trial.

## JURY DEMAND

105.    Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.    Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq.; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.; and New York State Labor Law § 194,  N.Y. Lab. Law § 194.

B.     Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

C.     Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits in the amount of the wages it is determined that the Plaintiff lost as a result of the Defendants' unlawful and discriminatory conduct, together with interest;

D.     Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, and pain and suffering, together with interest;

E.      Award the Plaintiff punitive damages;

F.      Award the Plaintiff liquidated damages;

G.      Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

H.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

I.      Such other and further relief as the court deems appropriate to be determined at trial.


Dated:      New York, New York
            August 31, 2020


By: _____
            Tiffany Ma, Esq.
            Young & Ma LLP
            575 Lexington Avenue, 4th Floor
            New York, NY 10022
            T: (212) 971-9773
            F: (212) 600-2301
            tma@youngandma.com

            Brett R. Gallaway, Esq.
            McLaughlin & Stern, LLP
            260 Madison Avenue
            New York , NY 10016
            T: (212) 448-1100
            F: (212) 448-0066

            *Counsel for Plaintiff Tiffany Lentz*